

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable W. P. Herms, Jr.
County Auditor
Waller County
Hempstead, Texas

Dear Mr. Herms:                    Opinion No. 0-7268

                    Re: Authority of the Commissioners
                        Court of Waller County to issue
                        a warrant for the amount erron-
                        eously collected for personal
                        property taxes, under the facts
                        stated.

        Your letter requesting an opinion from this Department
upon the above subject matter is as follows:

        "The Commissioners Court of Waller County, Texas,
has requested of me an advance opinion on the particu-
lar questions hereinafter set out and arising in con-
nection with the following facts:

        "During the regular meeting of the Board of Equali-
zation of Waller County, in 1944, such Board considered
the rendition sheet of one Frank Echol. It appears
from the statements of Frank Echol, of the County Clerk
and of two (2) present County Commissioners who were al-
so commissioners in 1944 and present at such meeting,
that the sworn rendition sheet originally executed by
said Frank Echol reflected the rendition of real prop-
erty only. It further appears from the statement of
such County Clerk and such County Commissioners, that
during its said 1944 meeting, proceeded to change such
rendition sheet by adding thereto 'personal property---
$1,000.00'; Frank Echol was not notified of such meet-
ing and did not appear thereat. Frank Echol first be-
came apprised of the acts of the Board of Equalization
changing the rendition sheet, on the 31st day of Janu-
ary, 1945 when he went to the tax collector to pay his
taxes. He refused to pay such taxes that day but paid
them the next day, February 1, 1945 by check, upon the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Mr. W. P. Herms, Jr.    - page 2

face of which he wrote, 'paid under protest'.  Frank
Echol states that he did not own any personal property
on January 1, 1944, but that he did have custody and
possession of about fifteen (15) head of mother cows
which belonged to his son who was a non-resident.  The
value of such cows was customarily fixed by the Board
of Equalization at $10.00 each.  Mr. Echol claims that
he made an over payment of $18.66 for the year 1944;
that such payment was illegally demanded of him; that
he involuntarily paid the same and that the County of
Waller now owes him such amount.

"Mr. Echol also met with the Board of Equalization
at its 1945 meeting, at which meeting his personal prop-
erty was reduced in value to $250.00, on which amount
he paid taxes on January 31, 1946.  At that time the
members of the Board of Equalization agreed verbally
that such sum of $18.66 was illegally assessed against
him for 1944, and should not have been collected, but
through inadvertence or neglect no order to that ef-
fect was put on the minutes of such Board.

"My questions arising from the above facts are as
follows:

        1.  May the Commissioners Court of Waller
        County, Texas, lawfully issue a warrant in
        the amount of $18.66 to the said Frank Echol
        in consideration for the execution, by the
        said Frank Echol, of a release of all suits
        or causes of action which he might have
        against Waller County based on the above
        transactions?

        2.  If the foregoing question is answer-
        ed in the negative, may the Commissioners
        Court sitting as a Board of Equalization
        correct the minutes of said Board at this
        time, in such manner as to reflect the act-
        ual occurrence at its meeting in 1944, and
        if so, could a warrant then be issued for
        the purposes described in question 1?"

Both of your questions are answered in the negative.

From your statement of the facts, it indisputably ap-
pears that Mr. Echol, with a full knowledge of the exact situa-
tion, voluntarily paid the taxes in dispute.  This is conclusive

Mr. V. P. Herms, Jr.    -    page 3

against his right to recover the same, and consequently it is conclusive of the right of the Commissioners Court to pay his claim, the same not being a valid enforceable demand against the county.

It has long been the rule that one who, knowing that a tax has been illegally assessed against him, voluntarily pays the same without any kind of duress or legal coercion, may not recover it upon the ground of such illegality. The fact that Mr. Echol paid the tax "under protest" does not change the situation, since he was in no wise coerced his actual payment was voluntary. His case would stand in a different light if his failure to pay such tax could legally have been followed up by a summary imposition of a penalty, forfeiture, or the like, against him, and he had made the payment to prevent such penalty or forfeiture. That would have been legal duress, entitling him to recover the payment, whether made under express protest or not.

In Austin National Bank v. Sheppard, 71 S. W. (2) 244, the Supreme Court said:

"(6)  A person who voluntarily pays an illegal tax has no claim for its repayment.  26 R.C.L.  p. 455, § 411;  City of Houston v. Feeser, 76 Tex. 365, 13 S. W. 266;  Galveston City Co. v. City of Galveston, 56 Tex. 486;  Gaar, Scott & Co. v. Shannon, 52 Tex. Civ. App. 634, 115 S. W. 361 (writ ref.), and authorities cited on page 364.  This case was affirmed by the United States Supreme Court, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510.

"(7)  A person who pays an illegal tax under duress has a legal claim for its repayment. * * *

"(8)  Duress in the payment of an illegal tax may be either express or implied, and the legal duty to refund is the same in both instances.  26 R.C.L. p.457, § 413.

"(9)  When the statute provides that the taxpayer who fails to pay the tax shall forfeit his right to do business in the state, and have the courts closed to him, he is not required to take the risk of having his right to resort to the courts disputed and his business injured while the invalidity of the tax is being adjudicated.  26 R. C. I. p. 458.

Mr. V. P. Herms, Jr.    -    4

"(10)  In the absence of a specific statute
to the contrary, the fact that an illegal tax is
or is not paid under protest is of no importance.
26 R.C.L. p. 459 § 414."

The same holding was made by the Supreme Court in
National Biscuit Co. v. State, 135 S. W. (2) 687, and still
again in Union Central Life Ins. Co. v. Mann, Attorney General, et al, 158 S. W. (2) 477.

The situation would not be any different if the Board
of Equalization should now rescind its erroneous order (if indeed it would have the power to do so).  That would be mere form,
and it could not operate to galvanize the claim into a legal enforceable obligation of the county, for the rights of the respective parties were fixed at the date of the voluntary payment.
One cannot do by indirection what he cannot do directly.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
            Ocie Speer
            Assistant

APPROVED JUN 24, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

OS-MR

